The opinion of the court was delivered by
Marr, J.
This suit was brought on the sixteenth of March, 1877, in the Fourth District Court for the parish of Orleans to revive a judg *342 ment of the Third District Court of New Orleans against Stephen 0: Nelson, signed on the twenty-ninth of March, 1867.
The petition charges substantially: That by act No. 46, of 1868,' the records of the Third District Court, except appeals from justices, were transferred to the Seventh District Court; that by act No. 2, of 1872, all suits and proceedings then depending in the Seventh District Court were transferred to the Fourth District Court, and among them the suit against Nelson ; that the judgment against Nelson was recorded in the parish of St. Mary on the first of April, 1867, and created a judicial mortgage on all the immovable property belonging to him in that parish, and specially on the lands described in the petition; that this property is now owned by the Citizens’ Bank ; that Nelson, now a nonresident, was adjudicated a bankrupt, and E. E. Norton was-appointed assignee; and that plaintiff desires to have the judgment revived.
The prayer is that Nelson, through a curator ad hoc, the Citizens’' Bank and Norton be cited to answer the petition ; and that contradictorily with them, the judgment be revived.
The bank plead to the jurisdiction without stating the grounds ; it also plead the prescription of two years under the bankrupt law, and of ten years under the State law ; it set up the discharge of Nelson in bankruptcy, as a perpetual bar ; and plead that the property having been sold according to law, could no longer be made subject to the judgment in favor of plaintiff; that therefore the bank could not be made a party to this suit, as owner of the land ; and that this proceeding, if authorized by law, could be maintained only against the assignee.
Norton did not appear, and default was entered against him ; and Nelson answered, pleading his discharge in bar of plaintiff’s claim.
The case was tried on these issues. The district judge held that Nelson, being a discharged bankrupt, could not be cited ; that Norton was the representative of Nelson or of his estate ; and that the bank was his representative, quoad the property described in the petition. He accordingly rendered judgment dismissing the demand as against Nelson, and maintaining it as against the Citizens’ Bank and Norton, the judgment, so'far as it relates to the bank, to have effect only against the property described in the petition, and not to hare effect or be enforced as a personal judgment against the bank ; and, so far as it relates to Norton, to have effect only against the estate in bankruptcy, and against Norton as assignee, and not personally.
The Citizens’ Bank and Mrs. Chapman appealed, the latter complaining of so much of the judgment as dismissed plaintiff’s demand as against Nelson.
The act of 1853, p. 250, re-enacted in the Revised Statutes, sec. 2813, and embodied in the R. C. C. as article 3547, after declaring that all *343 judgments for money shall be prescribed by the lapse of ten years aftei they are rendered, provides, however, “ that any party interested in any judgment may have the same revived at any time before it is prescribed, by having a citation issued according to law, to the defendant or his representative, from the court which rendered the judgment, unless the defendant or his representative show good cause why the judgment should not be revived ; and if such defendant be absent and not represented, the court may appoint a curator ad hoc to represent him in the proceedings, upon which curator ad hoc the citation shall be served.”
This statute evidently contemplates but two parties to the proceeding : the judgment creditor, the plaintiff, or such other person as may be interested in the judgment; and the judgment debtor, the defendant in the original suit. The word “representative” simply means the agent or attorney in fact, if the defendant be living, or the curator or executor, or administrator, or heir, as the case may be, if he be dead ; the person having authority and capacity by the appointment of the defendant, if he be living, or by judicial appointment, or by the effect of the law, if he be dead, to be cited and to stand in judgment in his room and stead. If he be living, absent and not represented, he must be cited through the curator ad hoc appointed by the courtier that purpose.
The judicial mortgage is the effect which the law gives to a final judgment when it has been recorded in the manner prescribed by law. The right to have a judgment revived is merely the means provided by law for keeping the judgment alive, which might otherwise be prescribed, barred, and extinguished by the lapse of time ; and this right is wholly independent of the right of mortgage which results from the inscription of the judgment.
The right to have a judgment revived, and the effect which the revival may have as against third persons, are two very different things. It will be time enough for third persons, that is persons who were not parties to the judgment, to assert their rights, and to controvert the validity and effect of the revival, when the revived judgment is set up and sought to be enforced to their prejudice.
All that is said in the petition about the legal mortgage which plaintiff claims, and all that is said about the rights of the Citizens’ Bank, 'must be left entirely out of view. The naked question is, has the plaintiff the right to have the judgment revived in this proceeding ; and that question is to be determined solely between the plaintiff, the judgment creditor, or his legal representative, and the judgment debtor, the defendant, or his legal representative. The Citizens’ Bank was, in no sense, the representative of the defendant Nelson ; and it was not capable of standing in judgment in his room and stead. The bank should not have been cited ; and it was not legally a party to the suit.
*344 By the surrender in bankruptcy the bankrupt divests himself of the title, ownership, and possession of all that was his not exempt by law; and the legal title vests in the assignee chosen by the creditors, or appointed by the court, to administer the estate in bankruptcy for the benefit of the creditors. The assignee is the representative of the creditors, so far as the estate in bankruptcy is concerned ; but he is not the representative of the bankrupt, for the very good reason that the bankrupt has no rights or interests to be protected or represented. By the surrender he abandons his rights, credits, effects, property, to his creditors ; and the law discharges him from liability for debts contracted prior to the date of the surrender, and provable against his estate in bankruptcy. It is no concern of his what becomes of the property afterwards: he would not be permitted to interfere in any manner with the disposition of it; and the creditors, whose debts are provable in bankruptcy, must and will have their respective rights, claims, and priorities determined and settled in the bankrupt court, without regard to him.
It is not necessary to make the assignee a party to a pending suit, whether brought by the bankrupt or against him. The person against whom the bankrupt may have brought suit could protect himself against a recovery by pleading the bankruptcy, and consequent divestiture of the rights of the bankrupt; and if he should neglect thus to protect himself, a recovery by the bankrupt and payment to him would be no obstacle to the assertion and enforcement of the same right by the assignee. If a suit should be pending or be brought against the bankrupt for a cause of action accruing before the bankruptcy, and provable in bankruptcy, the law affords the bankrupt ample means of protecting himself by pleading the bankruptcy and demanding a stay of proceedings ; and by afterwards pleading and exhibiting his discharge as a complete and perpetual bar.
The bankrupt act enables the assignee to intervene in pending suits, either as plaintiff or defendant, if, in his judgment, it should be necessary for the protection of the rights and interests of the creditors; but he can not bo compelled to assert, in the State courts, any of the rights of the bankrupt which vested in him by the assignment, nor any of the rights of the creditors against the bankrupt or against the estate, since he can compel every person asserting claims against the bankrupt or against the property surrendered to assert and maintain their rights contradictorily with him, in the bankrupt court. See Serra vs. Hoffman, 29 An. 18 to 23, where this subject is fully discussed.
The State courts are powerless to render any judgment against the assignee where he does not voluntarily submit to the jurisdiction, touching the payment of any debt due by the bankrupt, since the law *345 .requires all creditors having claims against the estate to prove them in the bankrupt court.
The assignee is not the representative of the judgment debtor, the defendant, in the sense of the act of 1853 ; and the bankrupt can not be brought into court for any purpose by citing the assignee.
The judgment against Nelson was a debt provable against his estate in bankruptcy ; and we have serious doubts as to the right to give it any new or additional effect by any form of judicial proceeding against the bankrupt, instituted after his discharge. We incline to the opinion that when the judgment debtor is cited to show cause why a judgment rendered against him prior to his bankruptcy, and provable against his estate, should not be revived, he has the right to plead and exhibit his discharge as a complete and perpetual bar to the proceeding.
By the constitution of 1868, art. 83, seven district courts were established for the parish of Orleans. Changes were made in the jurisdiction of the courts ; and that of the Second District Court was restricted to matters of probate, and that of the Third District Court to appeals from justices : and art. 151 required the General Assembly to “provide for the removal of causes now pending in the courts of this State to courts created by or under this constitution.”
The first act on this subject is No. 7, of 1868, p. 7, entitled “ An act to transfer all causes now pending before the courts of the parish of Crleans, under the constitution of 1864, to the courts created by the constitution of 1868.” The first section of this act declares that “ the records, dockets, books, and papers in any of the district courts of the parish of Orleans shall be removed to the several courts,” designated by the corresponding numbers created by the constitution of 1868: “ those in the Third District Court * * * to the Seventh District Court * * * except the records of appeals from justices of the peace, which last mentioned records are hereby transferred to the Third District Court.”
The second section of this act provides that “ the courts to which any suits now pending may be transferred, under this act, shall entertain and exercise jurisdiction over the same, and the cases so transferred shall be proceeded with in the new courts in all respects as if no change had been made.”
The third section requires the “records, dockets, indexes, and all other papers on file in the district courts of the parish of Orleans,” to be delivered to the clerks of the new courts to which they have been removed by the first section; and the original records of suits not finally disposed of in accordance with this act in the Third District Court * * * shall be transferred to the Seventh District Court * * * except the records of appeals from justices.”
*346 This act was amended by act No. 46, same session, p. 54, entitled “ An act to amend an act entitled,” giving the title of act No. 7. This act consists of a siDgle section, and it differs from the first section of the original act only in that it provides that all succession and probate causes " undisposed of and now pending before the district courts of New Orleans shall be removed to the new Second District Court, and that court shall have and maintain jurisdiction over the same to the full extent as though the said case had originally been instituted in said Second District Court.”
Act No. 2 of the called session of 1872, p. 38 of the acts of 1873, abolished the Seventh District Court; and section 8 of this act provided that “all suits and proceedings now depending in said Seventh District Court * * * are hereby transferred to the Fourth District Court -x- * and the said * * court is hereby vested with jurisdiction to hear and determine such suits or proceedings as if the same had been originally brought in said * * * court; and the said suits or proceedings are declared to be pending in said * * court from * * the passage of this act.
“ The records of all suits or proceedings heretofore brought in said Seventh Court, whether determined or not * * * are hereby transferred to said Fourth * * Court; and all proceedings so transferred shall be proceeded with in said Fourth * * Court, and be tried and determined, and process and judgment issued and executed therein by said * - court, in the same manner as if the same had been commenced originally in said * * court.”
Careful attention to the phraseology of acts 7 and 46 of 1868 will show that, with one exception, the word “removed.” is used only with respect to the records, dockets, books, indexes, and papers ; and that where jurisdiction is to be exercised, the word “transferred” is used ; and that this word is used only with respect to suits “ now pending ” in accordance with the limitation in art. 151 of the constitution, and the titles of the two acts. The exception is in the latter part of act No. 46, where the word “removed” is used with respect to “succession and probate causes undisposed of and now pending.” The Legislature kept up the distinction, however, and did not consider the word “removed” as having reference to or as conferring jurisdiction ; because the lan-' guage immediately following that requiring such causes to be “removed” is, that the new court into which they are removed “shall have and maintain jurisdiction over the same, to the full extent as though the said case had originally been instituted in said court.”
It is clear, therefore, that neither by ait. 151 of the constitution, nor by either of the acts 7 and 46 did the Seventh District Court acq.uire jurisdiction with respect to any other than suits then pending in the *347 Third District Court. It became merely tlie custodian of the records, dockets, books, indexes, and papers removed to it; and jurisdiction in all suits pending, not finally disposed of, which were transferred.
The first clause of section 8 of the act of 1872 relates to pending causes; and there might well be pending in the Seventh Court two classes of suits, those which were pending in the Third District Court at the time of the transfer, which had not been disposed of finally by judgment of the Seventh Court, and those which had been brought in the Seventh Court, and had not been tried and determined.
The second clause applies to all suits and proceedings, whether determined or not; but it is limited expressly to suits or proceedings “ heretofore brought in said Seventh District Court.” It is not possible to give this language any construction which would bring within its terms a suit which was finally disposed of by judgment in the Third District Court: which was not pending in the sense of art. 151 of the constitution, nor in tlie sense of acts 7 and 46 of 1868 ; and which never was pending in the Seventh District Court. The Fourth District Court did not acquire any jurisdiction with respect to this suit; and it may be seriously questioned whether it could have enforced that judgment by execution.
In LaChambre vs. Cole, 30 An. 961, we had occasion to consider a similar question. A judgment had been obtained in the district court in a probate proceeding upon the account of a tutor. At the time this judgment was rendered there were no probate courts ; and the district courts exercised all the probate jurisdiction of which they were divested by the constitution of 1868. The owner of that judgment brought suit to revive it in the district court in 1877, when the court could no longer have entertained jurisdiction of the original cause. It was urged that the citation should have been issued from the parish court vested with probate jurisdiction by the constitution of 1868; but we considered the language of the act of 1853 as determinative ; and we decided that “ the court which has jurisdiction of suits for revival of judgments is distinctly pointed out in the act of 1853, which provided for their revival. The citation must issue from and the suit must necessarily be addressed to the ‘court which rendered the judgment.’”
The law has conferred no power on the Fourth District Court to entertain tlie demand of plaintiff; and the whole proceeding in that court was coram non judice and void. We are not required now to decide whether the Third District Court would have had jurisdiction to issue the citation and to revive the judgment; but if it had not there is a casus omissus with respect to the judgments rendered in that court prior to the adoption of the constitution of 1868, which the legislative department of the government alone could have supplied.
*348 The judgment appealed from, except so much of it as dismissed the demand of plaintiff as against the defendant Nelson, is, therefore, annulled, avoided, and reversed ; and it is now ordered, adjudged, and decreed that the demand of plaintiff be rejected, and that her petition and suit be dismissed, she paying the costs in the district court and in this court. •
Rehearing refused.